## ROY MAXEY v. STATE.

No. 25,783. April 30, 1952.
Appellant's Motion for Rehearing Denied
(Without Written Opinion) June 11, 1952.

Hon. W. M. Mathis, Judge Presiding.

*Croslin & Pharr*, Lubbock, for appellant.

*George P. Blackburn,* State's Attorney, Austin, for the state.

GRAVES, Presiding Judge.

Negligent homicide of the second degree is the offense; the punishment, two years in jail.

The unlawful acts relied upon as constituting negligence are (a) the failure to yield the right-of-way to an automobile in which deceased was riding and which was proceeding along and upon a through public highway and which automobile was approaching so closely on said through highway as to constitute an immediate hazard (Art. 6701d, Sec. 73, R. C. S.), and (b) the failure to stop at a highway intersection in obedience to a stop sign erected at the intersection by the Texas State Highway Department (Art. 6701d, Sec. 73; Art. 827a, Sec. 12, P. C.).

The trial court submitted both alleged unlawful acts together, with appropriate instructions applying the law of negligent homicide—such as apparent danger of causing death, with no apparent intent to kill. In addition thereto, the trial court gave the following instructions, viz.:

"But if you find from the evidence beyond a reasonable doubt that the act committed was not an offense against the penal law, but one that will give a just occasion for a civil action, and that the homicide resulted from the act, you will find the defendant guilty of a misdemeanor and assess his punishment at a fine not exceeding One Thousand Dollars, and by imprisonment in jail not exceeding one year."

By this charge the trial court was applying the provisions of Art. 1243, P. C., which provides a lesser punishment for negligent homicide when the unlawful act relied upon as constituting negligence is one for which a civil action would lie than for an offense against the penal law. The propriety of giving such a charge in the instant case is not before us, or decided.

The fact that the jury assessed a punishment in excess of that provided in the charge quoted shows that appellant's guilt was predicated upon a finding that the unlawful acts constituted misdemeanors and a violation of the penal laws, as alleged in the information. The jury having failed to designate the unlawful act of which appellant was found guilty, the finding will be applied to that offense deemed to be supported by the evidence.

Sec. 73 of Art. 6701d, Vernon's R. C. S., the Uniform Act Regulating Traffic on Highways, is the statute under which the unlawful acts were alleged. It reads as follows:

"(a) The driver of a vehicle shall stop as required by this Act at the entrance to a through highway and shall yield the right-of-way to other vehicles which have entered the intersection from said through highway or which are approaching so closely on said through highway as to constitute an immediate hazard, but said driver having so yielded may proceed and the drivers of all other vehicles approaching the intersection on said through highway shall yield the right-of-way to the vehicle so proceeding into or across the through highway."

"(b) The driver of a vehicle shall likewise stop in obedience to a stop sign as required herein at an intersection where a stop sign is erected at one or more entrances thereto although not a part of a through highway and shall proceed cautiously, yielding to vehicles not so obliged to stop which are within the intersection or approaching so closely as to constitute an immediate hazard, but may then proceed."

The element common to each of the sections of this statute is the requirement on the part of the driver of a vehicle to stop at the entrance to or the intersection of a through highway. Section (a) requires the driver of a vehicle to stop under the circumstances there mentioned, regardless of whether a stop sign is or is not erected at the entrance or intersection, while section (b) requires the driver of a vehicle to stop in obedience to stop signs.

The count in the information attempting to allege a violation of section (a) of the statute fails to allege that the appellant did not stop at the entrance of the through highway, and therefore failed to allege that essential element of section (a) of the statute.

The information does charge the failure to stop at the highway intersection in obedience to the stop sign and, therefore, a violation of section (b) of the statute.

It is in the light of these conclusions that the facts must be appraised.

The sufficiency of the evidence to support the conviction is challenged.

Highway 380 is a through or cardinal paved highway running east and west between Tahoka and Brownfield. The village of West Point is situated on the highway about fifteen miles west from Tahoka in Lynn County. A farm-to-market road crosses the highway at right angles just west of the store and filling station at West Point. The road from the south is a graded dirt road; after it intersects the highway it continues north as a paved road. A stop sign has been erected by the State Highway Department on the dirt road at the point of intersection with the highway.

About 9:00 o'clock on the night of May 21, 1951, a collision occurred between a Lincoln and a Chevrolet automobile at the intersection of the highway and road above mentioned, in which several people were killed and some severely injured.

The witness Roane, who arrived at the scene soon after the collision, found the Lincoln automobile in the bar-ditch on the north side of the highway lying "upside down" with the front "headed east about a 45 degree angle." It had rolled over four times from the point where struck at the intersection. Appellant, seriously injured, was behind the steering wheel. Mrs. Riley was in the car dead and her husband was outside the car on the ground. The Chevrolet automobile was on the north side of the highway and east of the intersection. That car, not overturned but on its wheels, faced west. Skid marks on the pavement showed for a distance of 54 feet. Calvin Edwards, husband of the deceased named in the information, Pearl Edwards, was under the steering wheel and deceased was in the car.

The evidence conclusively shows that the Lincoln automobile was struck on the right side in the region of the front seat. The grill, bumper, and front end of the Lincoln was intact, showing that it had not run into or collided with, by running into, another automobile. The front end of the Chevrolet was demolished, evidencing that the collision was with the front of the car.

Appellant did not testify, nor did he offer any affirmative defense. There was no eye-witness to the collision.

A reasonable interpretation to be placed upon the testimony is that the Lincoln automobile was traveling north on the dirt road and, as it was in the act of crossing the highway, was

struck on the right side by the Chevrolet, which was traveling in a westerly direction on the highway.

There is no direct testimony that appellant did or did not stop at the stop sign at the intersection of the dirt road and the highway. Upon this point, the state calls attention to the res gestae statement made to the witness Roane by Calvin Edwards, driver of the Chevrolet automobile. Relative to this statement, we quote from the transcript as follows:

"Q. What was that statement, Mr. Roane, that you said you heard Calvin Edwards make at the scene of the collision? A. He wanted to know if his wife—

"Mr. Williams: Q. Will you tell the Jury what that statement was? A. He wanted to know if his wife was hurt.

"Mr. Williams: Q. Now, the statement, Mr. Roane? A. There was someone ask— him where he was going and he said he was going to Brownfield.

"Mr. Williams: Q. Was there any mention of how the accident occurred by Mr. Edwards? A. He said he never saw him, never saw the light.

"Q. Is that all he said? A. He said he didn't see the lights of the car at all.

"Mr. Williams: Q. Was there anything said by Calvin Edwards with reference to the other car stopping? A. He made the remark—he said he surely didn't stop."

The conclusion is reached that this expression on the part of Edwards, when taken into consideration with all the other facts and circumstances, was sufficient to warrant the jury's conclusion that the appellant did not stop in obedience to the stop sign, as alleged by the state.

The facts are therefore deemed sufficient to support the conviction.

Bills of exception appear complaining of the receipt in evidence of the testimony showing that, at the time, the Lincoln automobile was loaded with a large quantity of beer and whisky. Among the objections to such testimony was that it was prov-

ing another and extraneous offense and was prejudicial to the appellant and immaterial.

The fact that the Lincoln automobile was so loaded was part of the res gestae and admissible for whatever weight the jury might give thereto.

Bills of exception appear complaining of argument of state's counsel.

The argument complained of violated no statutory or mandatory rule and was, in each instance, withdrawn from the jury's consideration by an instruction not to consider the same. We are unable to find anything in the argument that would authorize the conclusion that appellant was prejudiced thereby.

No reversible error appearing, the judgment is affirmed.